IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNE CHRISTIAN, et al.,<br><br>   Plaintiffs,<br><br>   v.<br><br>LEAFFILTER NORTH, LLC,<br><br>   Defendant. | Case No. 25-cv-02866-CRB<br><br>**ORDER GRANTING MOTION TO STRIKE; ORDER DISMISSING CASE** |

Plaintiffs June Christian and Michael Sanford filed this class action suit against Defendant LeafFilter North, LLC, alleging that its sales and marketing tactics violate various California consumer protection laws and the Federal Trade Commission Act. Compl. (dkt. 1) ¶¶ 62, 86–148. LeafFilter moves to dismiss all of Plaintiffs' claims for failure to state a claim. Mot. (dkt. 18) at 10. It alternatively requests that, if the claims are not dismissed, the Court strike the class allegations contained in the complaint. Id. at 14–18. Because Plaintiffs' claims are unsuitable for class treatment, the Court **GRANTS** the motion to strike class allegations and **DISMISSES** the case for lack of federal jurisdiction.

## I.   BACKGROUND

### A.   Factual Background

LeafFilter is an Ohio-based company that manufactures, sells, and installs its gutter protection system in 46 states. Compl. ¶¶ 3, 26. The product prevents debris from accumulating in gutters, thereby reducing or eliminating the need for regular maintenance. Id. ¶ 24. LeafFilter markets its product to elderly homeowners, as they are more likely to lack the physical ability to clean their gutters or be at a heightened risk of injury. Id. ¶ 25. The company primarily sells its product through door-to-door sales. Id. ¶ 26.

The complaint alleges that LeafFilter trains its sales representatives using a "script book" that outlines strict techniques and procedures that trainees must use during in-home presentations. Id. ¶¶ 30–31. The script book includes a six-step process that LeafFilter "has spent years developing and refining" to achieve "an extremely high success rate for converting customer leads to sales." Id. ¶¶ 30–47. Plaintiffs allege that the sales process is designed to create a sense of urgency for the homeowner. Id. ¶ 34.

As part of the sales process, Plaintiffs allege, LeafFilter employs a "fraudulent" pricing scheme that artificially inflates the market value of the product. Id. ¶¶ 48. Specifically, Plaintiffs allege that LeafFilter employees calculate (1) an "initial" price, (2) a "par" price, and (3) a "cost" price. Id. ¶¶42–43. The initial price is the price that LeafFilter employees first offer to potential customers, the par price is LeafFilter's target sales price (usually about 65% of the initial price), and the cost price is the bare minimum price needed to cover material costs of the project. Id. Plaintiffs allege that LeafFilter calculates each price by multiplying the linear feet of each customer's gutters by a designated price per-foot. Id. ¶ 40. LeafFilter does not publish the per-foot price for each tier and advises employees against disclosing it as part of their sales pitch. Id. ¶ 41.

After LeafFilter employees offer the initial price, they then reduce it through a series of discounts. These include a coupon discount, various affinity-group discounts, immediate-order or same-day discounts, flexible-installation discount, and invoice or commercial discounts. Id. ¶¶ 50–58. Plaintiffs therefore allege that the initial price is merely a mechanism LeafFilter uses to trick homeowners into believing that they are receiving the product at a significant price reduction. Id. ¶ 40. Indeed, Plaintiffs allege that LeafFilter rarely sells its product at the initial price, and so the discounts are "deceptive and misleading to reasonable consumers" in violation of the Federal Trade Commission Act and various California Statutes. Id. ¶¶ 61–63, 86–148.

Plaintiff June Christian resides in Nice, California. Id. ¶ 18. In May 2024, she met with a LeafFilter sales representative to discuss installing the gutter-protection system on her home. Id. ¶¶ 65–66. LeafFilter initially quoted Christian $9,800, then reduced it to

$6,800. Id. ¶¶ 66–67. Christian wanted to wait until she received her social security check the following month, but after the sales representative said the discount would apply only that day, Christian felt "enormous pressure" and agreed, signing a written contract for $6,800. Id. ¶ 68.

Plaintiff Michael Sanford resides in Atwater, California. Id. ¶ 19. He contacted LeafFilter after seeing advertisements. Id. ¶ 70. A sales representative came to his home and quoted $7,023 to install the LeafFilter system, but then applied a series of discounts to reduce the price to $4,775 if Sanford purchased the product that day. Id. ¶ 72. Sanford agreed to install the LeafFilter system on the second floor of his home, signing a written contract for $2,850. Id. ¶ 73.

Both Plaintiffs allege that the false and misleading representations by the sales representatives made them believe that they were purchasing a high-quality product at a steep discount. Id. ¶ 74. Plaintiffs allege that the discounts were material to their decision to purchase the product. Id.

### B. Procedural History

In March 2025 Plaintiffs filed a putative class action against LeafFilter. Plaintiffs seek relief under (1) various provisions of the California Consumer Legal Remedies Act, including that LeafFilter made false and misleading statements concerning their discounts (Cal. Civ. Code § 1770(a)(13)), misrepresented that the product is of a particular standard or quality (Cal. Civ. Code § 1770(a)(7)), and advertised the product without the intent to sell it as advertised (Cal. Civ. Code § 1770(a)(9)); (2) California's False Advertising Law (Cal. Bus. & Prof. Code §§ 17500–01); (3) various provisions of California's Unfair Competition Law, including allegations of fraudulent, unfair, and unlawful practices (Cal. Bus. & Prof. Code §§ 17200, et seq.); (4) common law for breach of contract; (5) common law for unjust enrichment; and (6) California's Contractor's State License Law (Cal. Bus. & Prof. Code § 7160). Id. ¶¶ 86–148. Plaintiffs' complaint included class allegations purporting to represent all California residents who bought a LeafFilter system and paid more than the par price. Id. ¶ 76. So, although Plaintiffs assert only state-law claims, they

3

allege that federal jurisdiction is proper under the Class Action Fairness Act because the matter in controversy exceeds the sum or value of $5 million and at least one Plaintiff is a citizen of a different state than LeafFilter, which is a citizen of Ohio. Id. ¶ 21; see also 28 U.S.C. § 1332(d)(2).

LeafFilter now moves to dismiss all of Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6) and to strike the class allegations under Federal Rule of Civil Procedures 12(f). See Mot. The Court agrees that Plaintiffs' claims are unsuitable for class treatment, so it strikes the class allegations. Mot. at 22—26. The Court then considers, as it must, whether it retains federal jurisdiction in the absence of viable class allegations and ultimately concludes that it lacks jurisdiction to proceed with this case.

## II.   CLASS ALLEGATIONS

### A.   Legal Standard

A party may seek to strike any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," including class allegations. Fed. R. Civ. P. 12(f); In re Nexus 6P Prod. Liab. Litig., 293 F. Supp. 3d 888, 960–61 (N.D. Cal. 2018) (citation omitted). Motions to strike are disfavored, and Rule 23 is usually "the better vehicle to test the propriety of class certification." Connelly v. Hilton Grant Vacations Co., No. 12CV599 JLS KSC, 2012 WL 2129364, at *3 (S.D. Cal. June 11, 2012). Under Rule 23, Plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b); see also Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 359 (2011).

But it is proper to strike class allegations at the pleading stage if "any questions of law are clear and not in dispute, and [] under no set of circumstances could the claim or defense succeed may the allegations be stricken." Nexus 6P, 293 F. Supp. 3d at 960–61 (citation omitted); see also Stokes v. CitiMortgage, Inc., No. cv-14-278-BRO, 2015 WL 709201, at *4 (C.D. Cal. Jan. 16, 2015) ("'[W]here the matter is sufficiently obvious from

4

the pleadings, a court may strike class allegations' without first permitting class discovery." (citation omitted)); Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 59 (1st Cir. 2013) ("If it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations."); Donelson v. Ameriprise Fin. Servs., Inc., 999 F.3d 1080, 1092 (8th Cir. 2021) ("It is 'sensible … to permit class allegations to be stricken at the pleading stage' if it is 'apparent from the pleadings that the class cannot be certified.'" (citation omitted)).

### B. Discussion

LeafFilter first asserts that allegations based on oral communications preclude class certification, as they are too individualized to give rise to class relief. Mot. at 22–24. LeafFilter then contends that Plaintiffs will be unable to establish a reliable theory for classwide damages. Id. at 25–26; Reply at 13–15. The Court agrees that these individualized inquiries, taken together, preclude any possibility of class certification here.

As to oral communications, Plaintiffs allege that LeafFilter's training video for its sales representatives is 45-minutes long, suggesting that the representatives' sales pitch is similarly lengthy. Compl. ¶ 31. And although LeafFilter's script book provides some consistency across sales pitches to different clients, each interaction is unique dependent on the consumer's need for LeafFilter's product, the consumer's questions for the representative, potential available discounts, and the representatives' responses. See id. ¶¶ 33–38 (explaining how sales representatives are trained to tailor each sales presentation to an individual consumer). For example, LeafFilter's sales representatives told Christian that the discount they offered her was available only that day because they already had crews in the area, id. ¶ 68, while they offered Sanford a coupon discount and a "flex install" discount, id. ¶ 72. This is legally salient because it is the sales representatives' alleged misrepresentations, not the mere use of discounts, that constitutes a false or misleading statement and that therefore gives rise to liability. See Boris v. Wal-Mart Stores, Inc., 35 F. Supp. 3d 1163, 1170 (C.D. Cal. 2014) (product price is not an actionable

statement under the California consumer-protection statutes), aff'd 649 F. App'x 424 (9th Cir. 2016); Seale v. GSK Consumer Health, Inc., 718 F. Supp. 3d 1208, 1224 (C.D. Cal. 2024) (requiring affirmative misrepresentations regarding a price to state a claim); Carvalho v. HP, Inc., No. 21-cv-8015-BLF, 2022 WL 2290595, at *2 (N.D. Cal. June 24, 2022) (false-discount scheme actionable because of misrepresentations surrounding the false discounts). And where the potential class members did not rely on the same misrepresentations, "the possibility of class analysis disintegrates." Elson v. Black, 56 F.4th 1002, 1007 (5th Cir. 2023); see also Rovinelli v. Trans World Ent. Corp., No. 19-cv-11304-DPW, 2021 WL 752822, at *10 (D. Mass. Feb. 2, 2021) (striking class allegations where there were "critical disparities [] between customers' experiences"); cf. Pilgrim v. Universal Health Card, LLC, 660 F.3d 943, 948 (6th Cir. 2011) (denying class certification "even if, as the plaintiffs claim, callers heard identical sales pitches, Internet visitors saw the same website and purchasers received the same fulfillment kit, these similarities establish only that there is some factual overlap, not a predominant factual overlap").

As to damages, Plaintiffs seek to recover all sums paid above LeafFilter's internal "par" price. Compl. ¶ 75. They contend that they can use LeafFilter's business records to determine the par price for each contract and then simply subtract the par price from the amount actually paid to determine damages. See Opp. (dkt. 34) at 15. Yet Plaintiffs never explain why LeafFilter's par price is the proper metric to measure "the price a consumer would have been willing to pay for the product" had there been no misrepresentation—the legally relevant inquiry under California's consumer protection statutes. Vizcarra v. Unilever U.S., Inc., No. 20-cv-2777-YGR, 2023 WL 2364736, at *15 (N.D. Cal. Feb. 24, 2023). LeafFilter's par price is an internal sales metric, as distinct from the cost price, which is the "bare minimum needed to cover material costs." Compl. ¶ 43. Moreover, Plaintiffs must demonstrate that "their damages stemmed from the defendant's actions." Nguyen v. Nissan N. Am., Inc., 932 F.3d 811, 817 (9th Cir. 2019). But Plaintiffs' proposed method for calculating classwide damages would provide a maximum damages award to a consumer who bought LeafFilter's product at the initial price before the

representatives made any discounts (and who thus did not rely on any misrepresentations about discounts) and no damages whatsoever to a consumer who bought LeafFilter's product at or below the par price but would not have bought the product but for the discounts. Nor would it distinguish between the latter consumer and one who understands that price can be negotiable and would have bought the product either way but simply haggled to get the best deal possible. At bottom, the only way to accurately calculate damages would be to conduct a consumer-by-consumer inquiry into what each consumer was told, whether they relied on those representations, and to what extent they relied on those representations. This is not the kind of inquiry that can possibly be conducted on a classwide basis.

Because Plaintiffs' claims are inherently unsuitable for class treatment both as to the kind of misrepresentations alleged and the damages resulting from those alleged misrepresentations, the Court grants LeafFilter's motion to strike the class allegations.

### III.    SUBJECT MATTER JURISDICTION

#### A.    Legal Standard

Federal courts have limited jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); see also Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006) ("The objection that a federal court lacks subject-matter jurisdiction, may be raised by a party, or by a court on its own initiative, at any stage in the litigation." (citation omitted)).

#### B.    Discussion

Plaintiffs' sole alleged basis for federal jurisdiction is the Class Action Fairness Act, which they contend applies because this case is a purported class action with an amount in controversy over $5 million and diversity of citizenship between at least one Plaintiff and LeafFilter. Compl. ¶ 21; 28 U.S.C. § 1332(d). Thus, federal jurisdiction was proper while this case was a purported class action. But now that the class allegations have been stricken, Plaintiffs' jurisdictional hook no longer exists. District courts

regularly dismiss or remand cases where the parties asserted CAFA jurisdiction after the denial of class certification.  See, e.g., Salazar v. Avis Budget Grp., Inc., No. 07-cv-64-IEG, 2008 WL 5054108, at *5–6 (S.D. Cal. Nov. 20, 2008); Xiao-Mei Jin v. Ben Bridge-Jeweler, Inc., No. 07-cv-1587-GEB, 2009 WL 981600, at *1 (E.D. Cal. Apr. 9, 2009); Arabian v. Sony Elecs. Inc., No. 05-cv-1741-WQH, 2007 WL 2701340, at *3–7 (S.D. Cal. Sept. 13, 2007).  Though this case lost its class-action status at an earlier stage, the same logic applies.  The Court's conclusion that the claims cannot proceed on a class basis as a matter of law dissolves CAFA jurisdiction.  And because Plaintiffs do not assert a federal cause of action and the amount in controversy for Plaintiffs' claims is far below what is required for traditional diversity jurisdiction (Christian bought her LeafFilter product for $6,800, and Sanford bought his for $2,850, Compl. ¶¶ 69, 73), the Court must dismiss the remaining claims for lack of federal jurisdiction.  Fed. R. Civ. P. 12(h)(3).

### IV.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion to strike class allegations and **DISMISSES** the case for lack of federal jurisdiction without leave to amend but without prejudice to any action in a court of competent jurisdiction.

**IT IS SO ORDERED.**

Dated: August 13, 2025

CHARLES R. BREYER
United States District Judge